IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| HYUNDAI STEEL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00029 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| SSAB ENTERPRISES LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |
| DONGKUK STEEL MILL CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00032 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

# ORDER

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated: _____          _____
    New York, New York                              Judge

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 22-00029 |
| UNITED STATES, | ) |
| Defendant, | ) |
| SSAB ENTERPRISES LLC, | ) |
| and | ) |
| NUCOR CORPORATION, | ) |
| Defendant-Intervenors. | ) |
| DONGKUK STEEL MILL CO., LTD., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 22-00032 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| NUCOR CORPORATION, | ) |
| Defendant-Intervenor. | ) |

## DEFENDANT'S CORRECTED RESPONSE IN SUPPORT OF REMAND RESULTS

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                         ELIZABETH ANNE SPECK
JARED M. CYNAMON                    Senior Trial Counsel
Attorney                            Department of Justice
Office of the Chief Counsel for     Civil Division
    Trade Enforcement & Compliance   Commercial Litigation Branch
Department of Commerce              P.O. Box 480
Washington, DC 20230                Ben Franklin Station
                                    Washington, DC 20044
                                    Telephone: (202) 307-0369
                                    Facsimile: (202) 305-1571

September 18, 2024                  Attorneys for Defendant

# TABLE OF CONTENTS

**PAGES**

BACKGROUND ................................................................................2

ARGUMENT ...................................................................................5

    I.      Standard Of Review ...................................................5

    II.    Commerce's Determination That K-ETS Program
           Is *De Jure* Specific Pursuant to 19 U.S.C.
           § 1677(5A)(D)(i) Is Lawful And Supported By Substantial
           Evidence ......................................................................5

           A.    Statutory Framework .....................................6

           B.    Commerce's Conclusion That The K-ETS
                 Program Is *De Jure* Specific Is Supported By
                 Substantial Evidence And Is Otherwise In
                 Accordance With Law .....................................7

                 1.    Commerce's Determination On Remand
                       Provides Additional Explanation As To Why
                       The K-ETS Program Is *De Jure*
                       Specific .....................................................9

                 2.    In Finding *De Jure* Specificity, Commerce
                       Addressed The Court's Questions .......13

                 3.    Hyundai's Remaining Arguments Lack
                       Merit .......................................................19

C.     Commerce Reasonably Concluded That The
K-ETS Program Does Not Satisfy The
Requirements Contained In 19 U.S.C.
§ 1677(5A)(D)(ii) ...........................................20

CONCLUSION ................................................................27

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                         <u>**PAGES**</u>

*Amanda Foods (Vietnam) Ltd. v. United States,*
    774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011)..............................5, 20

*BGH Edelstahl Siegen GmbH v. United States,*
    600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022)............................17, 27

*BGH Edelstahl Siegen GmbH v. United States,*
    663 F. Supp. 3d 1378 (Ct. Int'l Trade 2023).................................23

*Bethlehem Steel Corp. v. United States,*
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002)...................................5

*Carpenter Tech. Corp. v. United States* 774 F. Supp. 2d 1343
    (Ct. Int'l Trade 2011)…………………………………………….……8

*Commissioner of Internal Revenue v. Brown,*
    380 U.S. 563 (1965) ........................................................................20

*Hyundai Steel v. United States,*
    701 F. Supp. 3d 1398 (Ct. Int'l Trade 2024).................................26

*Mittal Steel Point Lisas Ltd., v. United States*, 548 F.3d 1375
    (Fed. Cir. 2008)…………………………………………………………8

*Qingdao Sea-Line Trading Co. v. United States,*
    766 F.3d 1378 (Fed. Cir. 2014) .....................................................26

*Timex V.I. v. United States,*
    157 F.3d 879 (Fed. Cir. 1998) .......................................................20

## STATUTES

19 U.S.C. § 1677(5)(D)(i) .........................................................................5, 6

19 U.S.C. § 1677(5)(D)(ii) ...........................................................................3

19 U.S.C. § 1677(5A)(D) ............................................................................19

19 U.S.C. § 1677(5A)(D)(i)........................................................................4, 7

19 U.S.C. § 1677(5A)(D)(ii).............................................................4, 7, 20, 21

## ADMINISTRATIVE DETERMINATIONS

*Aluminum Foil from Oman,*
    86 Fed. Reg. 12,913 (Dep't of Commerce Mar. 5, 2021)................16

*Aluminum Foil from Oman,*
    86 Fed. Reg. 52,888 (Dep't of Commerce Sept. 23, 2021) ..............16

*Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea*, 87 Fed. Reg. 79 (Dep't of Commerce Jan. 3, 2022) (Final Results) ......................................................................................3

*Common Alloy Aluminum Sheet from Turk.,*
    85 Fed. Reg. 49,629 (Dep't of Commerce Aug. 14, 2020)..............16

*Common Alloy Aluminum Sheet from Turk.,*
    86 Fed. Reg. 13,315 (Dep't of Commerce Mar. 8, 2021)................16

*Countervailing Duties; Final Rule,*
    63 Fed. Reg. 65348 (Dep't of Commerce 25, 1998).........................18

*Multilayered Wood Flooring from the People's Republic of China,*
    80 Fed. Reg. 41,007 (Dep't of Commerce July 14, 2015) ..............22

*Silicon Metal from Austl.,*
     83 Fed. Reg. 9,834 (Dep't of Commerce Mar. 8, 2018)...................25

*Steel Nails from Oman,*
     80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) ...............25

## <u>OTHER AUTHORITIES</u>

Uruguay Round Agreements Act, Statement of Administrative
Action, H.R. Doc. No. 103-316, vol. 1 (1994)....................…… 7, 20, 26

## TABLE OF ACRONYMS

| | |
|---|---|
| AAGEP | Allocation and Trading of Greenhouse Gas Emissions Permits |
| BGH | BGH Edelstahl Siegen GmbH |
| CTL Plate | cut-to-length carbon-quality steel plate |
| EU | European Union |
| GOK | Government of Korea |
| Hyuandi Steel Resp. Br. | Hyundai Steel Response Brief |
| MOE | Ministry of Environment |
| IDM | Issues and Decision Memorandum |
| KAUs | Korean Allowance Units |
| K-ETS | Korean Emission Trading System |
| NSAQR | New Subsidy Allegation Questionnaire Response |
| SAA | Statement of Administrative Action Accompanying Uruguay Round Agreements Act |
| SQR | Supplemental Questionnaire Response |

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |  |
|---|---|---|
| HYUNDAI STEEL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00029 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| SSAB ENTERPRISES LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |
| DONGKUK STEEL MILL CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00032 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S CORRECTED RESPONSE IN SUPPORT OF <u>REMAND RESULTS</u>

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiffs Hyundai Steel Company (Hyundai) and Dongkuk Steel Mill Co., Ltd. (Dongkuk) challenging the Department of Commerce's (Commerce) final results of redetermination of the 2019 administrative review of the countervailing duty order on certain cut-to-length carbon-quality steel plate (CTL plate) from the Republic of Korea (Korea) ordered pursuant to *Hyundai Steel Company v. United States*, Ct. No. 22-00029, Ct. No. 22-00032, Slip Op. 23-182 (Ct. Int'l Trade December 18, 2023) (*Remand Order*). *See* Final Results of Redetermination Pursuant to Court Remand (April 16, 2024), ECF No. 75 (Final Remand Results), Appx16457-16480. As discussed below, Commerce's Final Remand Results fully comply with the Court's *Remand Order* and are supported by substantial evidence and in accordance with law. Accordingly, we respectfully request that the Court sustain the Final Remand Results.

## <u>BACKGROUND</u>

On April 8, 2020, Commerce initiated an administrative review of the countervailing duty order on CTL plate from Korea for the period of

review of January 1, 2019, through December 31, 2019. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 19,730 (Dep't of Commerce Apr. 8, 2020), Appx14553.

In the *Final Results*, Commerce found that Hyundai had received countervailable subsidies from the Government of Korea (GOK) as a participant in the Korean Emissions Trading System (K-ETS) program, which is a cap and trade system for limiting carbon emissions. *See Certain Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 79 (Dep't of Commerce Jan. 3, 2022) (Final Results) Appx1076–1077, and accompanying Issues and Decision Memorandum (IDM), Appx1041, and Appx1043-1053; *see also* Memorandum, "Post-Preliminary Analysis Memorandum," dated October 19, 2021 (Post-Preliminary Analysis Memorandum), Appx14328-14359. Specifically, Commerce found that Hyundai's receipt of an additional allocation of Korean Allowance Units (KAUs), *i.e.*, emissions permits, constituted a financial contribution in the form of revenue foregone pursuant to 10 U.S.C. § 1677(5)(D)(ii). *Id.*

Hyundai and Dongkuk subsequently filed complaints challenging Commerce's final results. On December 18, 2023, the Court remanded this matter to Commerce to reconsider whether the K-ETS program is specific within the meaning of 19 U.S.C. § 1677(5A)(D)(i), and to reconsider whether 19 U.S.C. § 1677(5A)(D)(ii) applies. *Remand Order* at 21-22.

Further, the Court determined that Commerce "failed to address" the following questions: (1) "did {Commerce} consider whether, as Hyundai argues, any large business could qualify for the additional three percent allocation regardless of the industry to which it belongs?" and (2) "did Commerce consider that the {GOK's} determination that "Manufacturing of Basic Steel" qualified for the additional allocation appears to have no significance for whether any other enterprise or industry does or does not qualify?" *See Remand Order* at 19-21. Finally, the Court determined that Commerce failed to explain whether the three conditions contained in 19 U.S.C. § 1677(5A)(D)(ii) are met with respect to the K-ETS program, such that the program is not *de jure* specific. *Remand Order* 20-21.

On remand, Commerce provided further explanation and analysis for its finding that the provision of an additional three percent KAU allocation to participants in designated subsectors is *de jure* specific. Final Remand Results at 4-24, Appx16460-16480.

## ARGUMENT

## I.  Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

## II.  Commerce's Determination That The K-ETS Program Is *De Jure* Specific Pursuant To 19 U.S.C. § 1677(5A)(D)(i) Is Lawful And Supported By Substantial Evidence

Consistent with the *Remand Order*, Commerce provided further explanation for its finding that the provision of an additional KAU allocation to participants in designated subsectors is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i). *See* Final Remand Results 4-24,

Appx16460-16480.  Hyundai disagrees and alleges that Commerce merely reiterated its justification from the final results and failed to address the Court's concerns.  As explained below, these arguments are contradicted by the remand results.

### A. Statutory Framework

Pursuant to 19 U.S.C. § 1677(5A)(D)(i), when "the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry, the subsidy is specific as a matter of law."  19 U.S.C. § 1677(5A)(D)(i).  "Any reference to an enterprise or industry is a reference to a foreign enterprise or foreign industry and includes a group of such enterprises or industries."  19 U.S.C. § 1677(5A).

A subsidy is not *de jure* specific if the authority providing the subsidy or the legislation pursuant to which the authority operates establishes objective criteria or conditions governing the eligibility for, and the amount of, a subsidy, where:  (I) eligibility is automatic; (II) the criteria or conditions for eligibility are strictly followed; and (III) the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document so as to be capable of verification.

*See* 19 U.S.C. § 1677(5A)(D)(ii).  "Objective criteria or conditions" in this

section of the Act denotes the criteria or conditions that are neutral and

that do not favor one enterprise or industry over another.  Final

Remand Results at 5, Appx16461; 19 U.S.C. § 1677(5A)(D)(ii); *see also*

Statement of Administrative Action Accompanying the Uruguay Round

Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 930

(explaining that such criteria or conditions "…must be economic in

nature and horizontal in application, such as the number of employees

or the size of the enterprise.").

### B. Commerce's Conclusion That The K-ETS Program Is *De Jure* Specific Is Supported By Substantial Evidence And Is Otherwise In Accordance With Law

Contrary to Hyundai's assertions, Commerce reasonably

concluded that the K-ETS program is *de jure* specific pursuant to 19

U.S.C. § 1677(5A)(D)(i).  *See* Plaintiff Hyundai Steel Company's

Comments On Commerce's Final Results Of Redetermination Pursuant

To Court Remand, ECF No. 75 (June 6, 2024) (Hyundai Steel Res. Br.) at 6-30.[1]

In the remand results, Commerce further analyzed the record in accordance with the Court's guidance in the *Remand Order* and explained why it continued to find the K-ETS program is *de jure* specific. Hyundai, however, contends Commerce's remand results are not in accordance with the *Remand Order* because: (1) the Court has previously rejected Commerce's reasoning; (2) Commerce failed to address the Court's questions; and (3) Commerce's reasoning is allegedly inconsistent with the purpose and intent behind the

---

[1] Dongkuk's brief incorporates by reference all arguments and explanations in Hyundai's brief. *See* Comments of Dongkuk Steel Mill Co., Ltd. In Opposition To Commerce's April 16, 2024, Redetermination, Ct. No. 22-32, ECF No. 79 (June 20, 2024). Reference to arguments made by "plaintiffs" thus contemplates that Dongkuk has adopted an argument advanced by Hyundai. In addition, as the index filed on April 30, 2024 indicates (ECF No. 71-2), Dongkuk did not file any comments before the agency concerning Commerce's draft remand results and thus failed to exhaust its administrative remedies. *Mittal Steel Point Lisas Ltd.*, *v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (explaining a party that fails to exhaust its administrative remedies cannot raise those arguments on appeal); *see also Carpenter Tech. Corp. v. United States* 774 F. Supp. 2d 1343, 1349 (Ct. Int'l Trade 2011) (finding a failure to exhaust administrative remedies when a party did not file comments on draft remand results).

countervailing duty law and specificity.  *See* Hyundai Steel Res. Br. at

6-21.  None of these arguments have merit.

> ### 1. Commerce's Determination On Remand Provides Additional Explanation As To Why The K-ETS Program Is *De Jure* Specific

First, Hyundai erroneously contends that the Court has already

rejected Commerce's logic that the K-ETS program expressly limits

access to the subsidy to an enterprise or industry, and it maintains that

"the {Ministry of Environment (MOE)} simply applies the trade

intensity and production cost criteria to determine what sectors

qualify."  *See* Hyundai Steel Res. Br. at 6-11.  This ignores the

additional explanation that Commerce provided in its remand results.

Commerce explained that, in reality, the MOE "specifically limited

eligibility of the subsidy to a subset, or group, of industries that meet

the trade intensity and production cost criteria."  Final Remand Results

at 16; *id.* at 6 (explaining that the legal limitation on eligibility for the

additional three percent KAU constitutes *de jure*  specificity); *see also*

GOK May 20, 2021 SQR at Exhibit CEP-8, Appx15481-15510.

The Act on the Allocation and Trading of Greenhouse Gas

Emissions Permits (AAGEP), which is the statute implementing the K-

ETS program, permits certain industries to receive the full 100 percent allocation of KAUs (rather than a 97 percent allocation of KAUs) for a specified year.  Specifically in the second phase of the program, the MOE divided 26 subsectors into 63 subsectors "in association with the selection of industries for 100% free allocation due to the implementation of the allocation with charges and to objectively reflect economic characteristics."  Final Remand Results at 16; *id.* at 6; GOK's Letter, "Response to the New Subsidy Allegation Questionnaire," dated May 17, 2021 (GOK NSAQR) at 24, Appx10139, 46, Appx10161, and Exhibit CEP-1, Appx 11573-11696; GOK's Letter, "Submission of Translation," dated May 20, 2021 (GOK May 20, 2021 SQR) at Exh. CEP-8, Appx15481-15510.

Then, the GOK applied certain criteria to determine which industries would receive additional permits, or the 100% free allocation. *Id.*  Those criteria are: "(1) a business with an international trade intensity of at least 30 percent; (2) a type of business with production costs of at least 30 percent; or (3) a type of business with an international trade intensity of at least 10 percent and production costs of at least 5 percent."  Final Remand Results at 7, Appx16463.

Thereafter, only those 63 subsectors who meet those criteria are eligible to receive the additional three percent free allocation.  *Id.* at 16-17, Appx16472-16473; GOK May 20, 2021 SQR at Exhibit CEP-8, Appx15481-15510.  As Commerce explained, the sectors that satisfied these criteria "by their nature, have more GHG-intensive (*i.e.*, heavy polluting, production processes (the production cost factor) and/or are more dependent on international markets for sales and/or sourcing (the international trade intensity factor) than other subsectors that . . . do not qualify for the additional KAU allocation."  Final Remand Results at 10, Appx16466.

Further, Commerce cited a GOK press release that identified examples of subsectors that would receive the full 100% allocation, such as "the steel, semiconductor, display, electricity & electronics, motor vehicles, shipbuilding and cement industries, etc."  *Id.* at 17, Appx16473; *see* GOK May 20, 2021 SQR at Exh. CEP-8, Appx15481-15510.

Although Hyundai claims that the MOE could not have "expressly limited" the KETS allocations because it did not know which subsectors would meet the criteria until phase two, this ignores that the GOK

11

expressly limited the 100% free allocation of the additional KAUs to a specific enterprise or industry (or group thereof). Hyundai Res. Br. at 10-11. As Commerce explained, in the past it has also determined that subsidy programs are *de jure* specific "because the government in question identified qualifying recipients on the basis of characteristics of relevant industries, *e.g.*, targeting enterprise or industries that perform certain types of activities or use certain types of resources." Final Remand Results at 17-18, Appx16473,16474 and n.54, Appx16468 (citing administrative determinations). Hyundai's argument is antithetical to the statute because it would permit a government to "enact its law in phases to escape countervailability—so long as the initial underlying legislation did not outright name the recipient companies or subsectors, there could be no *de jure* specificity." Final Remand Results at 17, Appx16473. Thus, Commerce provided additional explanation in accordance with the *Remand Order*, and its redetermination is supported by substantial evidence and in accordance with law.

## 2. In Finding *De Jure* Specificity, Commerce Addressed The Court's Questions

Next, Hyundai incorrectly contends that Commerce failed to respond to the Court's specific questions. *See* Hyundai Steel Res. Br. at 12-21; *Remand Order* at 19. As explained below, Commerce addressed both of the Court's questions and provided additional analysis.

Hyundai maintains that Commerce did not directly answer the Court's first question – whether any large business could qualify for the additional allocation regardless of industry – contending that Commerce's finding that not every industry in Korea is subject to the K-ETS program is a non-sequitur. *See* Hyundai Res. Br. at 12-13. Commerce's explanation, however, goes beyond Hyundai's cursory summarization.

Commerce explained that "{a}t the most basic level, to answer the CIT's question, any large business could not qualify for the additional three percent allocation because not all large businesses are necessarily subject to the K-ETS program overall." Final Remand Results at 18, Appx16474. Commerce further clarified that "the GOK then applies the trade intensity and production cost criteria to further limit those industries subject to the K-ETS program to receive the additional three

percent free allocation of permits." *Id.*, Appx16474-16475; *see also* GOK

NSAQR at 41, Appx10156.  Thus, Commerce demonstrated that:

> {A}ny large business is not going to qualify for the 100
> percent allocation regardless of the industry to which it
> belongs because not all large businesses or industries are
> subject to the K-ETS program and among those businesses
> and industries that are subject to the K-ETS program, not
> all large business or industries will receive the 100 percent
> allocation, but only "participants in the *industrial sectors*
> that meet the (i) trade intensity and (ii) production costs
> criteria."

Final Remand Results at 18-19, Appx16474-16475.  Thus, Hyundai

avoids Commerce's full explanation, which responded to the Court's

first question.

Similarly flawed is Hyundai's contention that Commerce failed to

respond adequately to the Court's second question, which requested

that Commerce "consider that the {GOK's} determination that

'Manufacturing of Basic Steel' qualified for the additional allocation

appears to have no significance for whether any other enterprise or

industry does or does not qualify." *Remand Order* at 19.  Hyundai

contends that "...the authority or legislation must 'expressly limit

access to the subsidy to an enterprise or industry,' and that the KETS

does not do so here." *See* Hyundai Res. Br. at 13-16.  Commerce,

however, considered and responded to the question and gave examples of *de jure* specificity where the program was provided based on the activities or characteristics of relevant industries.  Final Remand Results at 19-21, Appx16475-16477.

In the Final Remand Results, Commerce explained that, although the underlying legislation governing K-ETS does not identify by name the subsectors that qualify for the additional allocation, the MOE pre-selects such subsectors in defined intervals.  *See* Final Remand Results at 16, Appx16472.  The MOE determines which industrial subsectors qualify for additional permits, and this selection happens before the distribution of the allocation, *i.e.*, at the outset of each phase of the program.  *Id.*  As a result, Commerce found that the MOE imposes the "international trade intensity" and "production cost" qualifying criteria in an explicit manner, and on a recurring basis.  *Id.*  Moreover, the GOK even explained that it would deduct credits from participants who failed to fulfill the trade intensive or production costs criteria.  Final Remand Results at 8, Appx16464; *see* GOK NSAQR at 27, Appx10142.  Conversely, for "participants that are associated with the sectors or subsectors that meet the trade intensive or production costs criteria, no

deduction is made" and they receive 100 percent of the emission permits calculated for the industry. GOK NSAQR at 27, Appx10142. Thus, there *is* an intent to limit which enterprises may qualify because the application of the law is focused on a certain type of enterprise or industry—trade and/or emissions-intensive subsectors.

Finally, Commerce also reasoned that it has found *de jure* specificity where the program was provided based on the activities or characteristics of relevant industries, such as "companies that satisfied certain investment and employment thresholds." Final Remand Results at 19, Appx16475; *see Common Alloy Aluminum Sheet from Turk.*, 85 Fed. Reg. 49,629 (Dep't of Commerce Aug. 14, 2020) (prelim. CVD determ.), and accompanying PDM at 24-25, unchanged in *Common Alloy Aluminum Sheet from Turk.*, 86 Fed. Reg. 13,315 (Dep't of Commerce Mar. 8, 2021) (final CVD determ.); *Aluminum Foil from Oman*, 86 Fed. Reg. 12,913 (Dep't of Commerce Mar. 5, 2021) (prelim. CVD determ), and accompanying PDM at 12-13, unchanged in *Aluminum Foil from Oman*, 86 Fed. Reg. 52,888 (Dep't of Commerce Sept. 23, 2021) (final CVD determ.).

Similarly, in *BGH Edelstahl Siegen GmbH v. United States*, 600 F. Supp. 3d 1241, 1264 (Ct. Int'l Trade 2022), the Court upheld Commerce's determination that the EU Emission Trading System was *de jure* specific because it was expressly limited by law to the companies on the carbon leakage list.  *Id.*  In that case, the Court agreed that "not all companies subject to the {Emission Trading System} are eligible to be on the carbon leakage list" and thus "{i}t is reasonably discernible that Commerce determined the restrictions of the carbon leakage list to favor certain enterprises or industries or groups of certain industries or enterprises."  *Id.*  As Commerce explained in its remand results, like the EU, here the GOK applied the trade intensity and cost criteria to 63 subsectors to determine which industries would qualify for the full 100 percent allocation, which limited the eligibility for the subsidy to certain enterprises or industries.  Final Remand Results at 19, Appx16475.  Thus, Commerce's determination is consistent with the statute, legislative history, precedent, and agency practice.

### 3.  Hyundai's Remaining Arguments Lack Merit

Also flawed is Hyundai's contention that Commerce erred in treating the differing KAU allocations as a countervailable subsidy

because doing so "does not further the purpose of the CVD law or the specificity test." Hyundai Resp. Br. at 18. In support of its argument, Hyundai argues that Korean companies have to incur unwanted costs to reduce their carbon emissions and that U.S. companies are not subject to a cap and trade system. *Id.* at 18-21. But this Court has already addressed whether the cap and trade system imposes a burden on companies subject to its requirements in its analysis of whether Hyundai received a benefit. *See Remand Order* at 11-13. In its *Remand Order*, the Court determined that despite the burden, Hyundai still received a benefit because "...the free provision of additional units *reduces* the compliance burden that recipients would otherwise have to bear." *Id.* at 12. Thus, the Court has already addressed and determined that the incurred costs by the K-ETS program actually confer a benefit.

In addition, Commerce does not take into account the effects of the subsidy or any related burdens imposed on a firm that are related to the granting of the subsidy, such as those pertaining to compliance with certain environmental obligations. *See* Final Remand Results at 21, Appx16477 (citing *Countervailing Duties; Final Rule*, 63 Fed. Reg.

65,348, 65,361 (Dep't of Commerce 25, 1998) (*CVD Preamble*)).  Instead,

Commerce reviews each subsidy independent of other parts of a law or

regulation, to evaluate whether a countervailable benefit has been

conferred, and does not take into account any effects related to the

granting of the subsidy.  Final Remand Results at 21, Appx16477; *CVD

Preamble,* 63 Fed. Reg. at 65,361 ("A subsidy that reduces a firm's cost

of compliance remains a subsidy…even though the overall effect of the

two government actions, taken together, may leave the firm with higher

costs.").  Accordingly, it is immaterial to Commerce's determination

whether a subsidy program, or related law or regulation affects the

recipient's behavior.  Final Remand Result at 21-22, Appx16477-16478.

In addition, Hyundai's assertion that "…the Court may consider

the purpose and intent behind the countervailing duty and specificity as

to whether the program is specific pursuant to 19 U.S.C. § 1677(5A)(D)"

is mistaken.  *See* Hyundai Res. Br. at 19-21.  In raising this argument,

Hyundai misinterprets the relevant standard of review.  Neither of

Hyundai's citations to *Timex V.I. v. United States*, 157 F.3d 879, 881

(Fed. Cir. 1998) or *Commissioner of Internal Revenue v. Brown*, 380

U.S. 563, 571 (1965) concern *de jure* specificity or are applicable to the

Court's task in evaluating the remand. Instead, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods*, 774 F. Supp. 2d at 1290. As explained in our briefing and in the Final Remand Results, Commerce's explanation satisfies the applicable standard of review.

### C. Commerce Reasonably Concluded That The K-ETS Program Does Not Satisfy The Requirements Contained In 19 U.S.C. § 1677(5A)(D)(ii)

Next, Hyundai erroneously contends that Commerce failed to address whether 19 U.S.C. § 1677(5A)(D)(ii) applied. *See* Hyundai Res. Br. at 21-30. This provision provides that a subsidy is not specific as a matter of law if: (1) eligibility is automatic; (2) the eligibility criteria are strictly followed; and (3) the criteria or documents are clearly set out in the relevant statute or regulation and are capable of verification. 19 U.S.C. § 1677(5A)(D)(ii); *see also* SAA at 930 ("…the objective criteria or conditions must be neutral, must not favor certain enterprises over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise."). Specifically, Hyundai alleges that Commerce's

explanation is not satisfactory because "whether subsectors meet the trade intensive and production cost criteria does not mean that the criteria favor one enterprise or industry over another…." Hyundai Res. Br. at 21-24.

Commerce, however, explained that "{t}he criteria included in the AAGEP and implementing rules establish that some industries or enterprises may benefit from the additional assistance in the form of the allocation of additional KAUs, while others do not." Final Remand Results at 23, Appx16479. Although the criteria are based on mathematical formulas, they are not neutral because they favor certain enterprises or industries over others and, therefore, are not objective within the meaning of 19 U.S.C. § 1677(5A)(D)(ii). *Id.* Thus, the production cost and international trade intensity factors are not horizontal in application and are not neutral because "they favor certain industries, such as primary steel, over others, such as electricity/power generation, and the manufacture of wood, plastic, and concrete products." *Id.*

In addition, Hyundai asserts that the criteria are neutral and objective because they are applied evenly to all subsectors, and it

21

contends that *Wood Flooring from China*, a decision upon which

Commerce relied, is inapposite. *See* Hyundai Res. Br. at 26-30 (citing

*Multilayered Wood Flooring from the People's Republic of China*, 80

Fed. Reg. 41,007 (Dep't of Commerce July 14, 2015) (final results), and

accompanying IDM at 20) (*Wood Flooring from China*). In *Wood*

*Flooring from China*, the tax deduction at issue favored certain

enterprises that hired disabled workers. But Hyundai's cursory

assessment of *Wood Flooring from China* fails to recognize that the

employment of disabled workers is neutral because the eligibility

criteria are generally available to any company that hires disabled

persons and there were no other criteria that further limited the

availability and usage of the tax incentive. Final Remand Results at

23-24, Appx16479-16480. Thus the program is unlike the K-ETS

program where the AAGEP and implementing rules "carve out" certain

industries to receive the full 100 percent allocation based upon specific

characteristics. *Id.*

Moreover, Commerce addressed "why energy usage is not objective

criteria in the same way the size of an enterprise or number of

employees would be." *C.f. BGH Edelstahl Siegen GmbH v. United*

*States*, 663 F. Supp. 3d 1378, 1384 (Ct. Int'l Trade 2023) (On remand, the Court instructed Commerce to either explain and support its determination that the criteria are not neutral (*i.e.*, are not economic in nature and horizontal in application) or conduct a *de facto* analysis or reconsider its determination.).  Here, based on the record evidence before it, Commerce explained that, unlike neutral criteria such as the number of employees or size of the enterprise, the criteria for the additional KAU allocation inherently favors certain subsectors, such as primary steel producers (*i.e.*, Hyundai).  Final Remand Results at 23-24, Appx16479-16480.  The favored subsectors tend to be those with heavy polluting production processes and/or those more dependent on international markets.  *Id.*  The criteria do not favor subsectors equally and, thus, are not horizontal in application.  *Id.*

Instead, a relatively narrow range of subsectors qualifies for the additional KAU allocation—*i.e.*, the trade and/or emission-intensive subsectors—compared to the  range of subsectors that receive the standard allocation.  *See id.* at 13-15, Appx16469-16471.  The standard allocation covers a much broader spectrum of activity, including electricity, telecommunications, computer programming, insurance, and

hospital activities. *Id.* Thus, this comparison demonstrates that the criteria for qualifying for the additional KAU allocation is not equitable across the economy but rather limits eligibility to certain types of industries. *Id.* This, again, is consistent with the Korean government's intent to "rehabilitate and provide equal market opportunity to the participants in markets in which there are other competitors who are not subject to restrictions similar to those imposed under this program." *Id.* at 12, Appx16468; GOK NSAQR at 27, Appx10142.

Commerce's *de jure* specificity determination is also consistent with its practice. In its investigation of silicon metal from Australia, Commerce determined that, with regard to Australia's renewable energy program, the criteria were not neutral because they "favor enterprises or industries that conduct 'emission-intensive' activities and are 'trade-exposed' over industries or enterprises that do not conduct such activities and are not trade exposed which thus constitutes an explicit limitation on access to the subsidy." *Silicon Metal from Austl.*, 83 Fed. Reg. 9,834 (Dep't of Commerce Mar. 8, 2018) (final deter.), and accompanying IDM at Cmt. 3. Accordingly, Commerce determined the program to be *de jure* specific.

Similarly, in an investigation of steel nails from Oman, Commerce explained that the Standard Industrial Management Regulations Law (SIMR)—a law concerning industries eligible to receive industrial licenses—expressly limited tariff exemptions to "'industrial establishments,' which are defined as enterprises that transform or convert raw materials into semi-finished goods or convert the latter into finished products, *i.e.*, manufacturing industries." *Steel Nails from Oman*, 80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) (final deter.), and accompanying IDM at Cmt. 1. Commerce found that SIMR favored industrial establishments that produce semi-finished or finished products. *Id.*

Further, the specificity test is intended to "winnow out only those foreign subsidies which truly are broadly available . . . throughout an economy"{;} it cannot have been intended to winnow out subsidies available only to discrete groups, such as the additional allowances under K-ETS. SAA at 929. Otherwise, simple rephrasing of the implementing legislation by a foreign government would permit the creation of a loophole to avoid the application of the CVD remedy and relief to an injured domestic industry.

Finally, we recognize that the Court rejected Commerce's position that the K-ETS program's trade intensity and cost criteria are not "horizontal in application" in *Hyundai Steel v. United States*, 701 F. Supp. 3d 1398 (Ct. Int'l Trade 2024). However, that determination was made in a separate proceeding with a different record. *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("…each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."). For the reasons explained above, we respectfully disagree with the Court's conclusion in *Hyundai* that the K-ETS program does not expressly limit the access to the subsidy to certain sectors. Instead, we respectfully submit that the Court in *Hyundai* erred in not finding that the K-ETS program is analogous to the program in *BGH*. As we explained above, the specificity determination for the European emissions program in that case is very similar, with the programs having virtually identical eligibility criteria. *BGH*, 600 F. Supp. 3d at 1264. The only real distinction, that the EU maintains a "carbon leakage list" and Korea does not, is not meaningful. Remand Results at 14.

Accordingly, Commerce addressed the Court's concerns and sufficiently explained its position on remand. Therefore, this Court should sustain Commerce's Final Remand Results.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

27

OF COUNSEL:                          /s/ Elizabeth Anne Speck
JARED M. CYNAMON                     ELIZABETH ANNE SPECK
Attorney                             Senior Trial Counsel
Office of the Chief Counsel for      Department of Justice
   Trade Enforcement & Compliance   Civil Division
Department of Commerce               Commercial Litigation Branch
Washington, DC 20230                 P.O. Box 480
                                     Ben Franklin Station
                                     Washington, DC  20044
                                     Telephone:  (202) 307-0369
                                     Facsimile: (202) 305-1571


September 18, 2024                   Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 4,924 words, including text, footnotes, and headings.

/s/ Elizabeth Anne Speck