**Slip Op. 25-6**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

| Court No. 22-00029 | Court No. 22-00032 |
|---|---|
| HYUNDAI STEEL COMPANY, *Plaintiff*, v. UNITED STATES, *Defendant*, and SSAB ENTERPRISES LLC and NUCOR CORPORATION, *Defendant-Intervenors*. | DONGKUK STEEL MILL CO., LTD., *Plaintiff*, v. UNITED STATES, *Defendant*, and NUCOR CORPORATION, *Defendant-Intervenor*. |

Before: M. Miller Baker, Judge

## OPINION

[The court sustains Commerce's redetermination.]

Dated: January 16, 2025

*Brady W. Mills*, *et al.*, Morris, Manning & Martin, LLP, Washington, DC, on the comments for Hyundai Steel Company.

*Jeffrey M. Winton* and *Vi N. Mai*, Winton & Chapman PLLC, Washington, DC, on the comments for Dongkuk Steel Mill Co., Ltd.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *L. Misha Preheim*, Assistant Director; and *Elizabeth Anne Speck*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the comments for Defendant. Of counsel for Defendant was *Jared M. Cynamon*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Alan H. Price*, *Christopher B. Weld*, *Derick G. Holt*, and *Paul A. Devamithran*, Wiley Rein LLP, Washington, DC, on the comments for Nucor Corporation.

*Baker*, Judge: These countervailing duty cases involving South Korea's greenhouse gas regulatory system return from the Department of Commerce. According to the agency's original determination, that country's provision of 100 percent of carbon trading units—things with economic value—to some emitters, including Plaintiff Hyundai in Case 22-29, is a countervailable subsidy when others receive only 97 percent.

To so conclude, Commerce needed to find that "(1) [the South Korean] government provide[d] a financial contribution (2) to a specific industry and (3) a recipient within the industry receive[d] a benefit as a result of that contribution." *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369 (Fed. Cir. 2014) (citing 19 U.S.C. § 1677(5)(B)); *see also* 19 U.S.C. § 1677(5)(A).

Ct. Nos. 22-00029, 22-00032                                    Page 3

In its previous decision, the court sustained the Department's affirmative findings on the first and third of those elements. *See Hyundai Steel Co. v. United States*, Ct. Nos. 22-00029 and 22-00032, Slip Op. 23-182, at 10–11 (financial contribution), 11–13 (benefit), 2023 WL 8715732, at **4–5 (CIT Dec. 18, 2023). As to the second (specificity), however, the court found the agency's explanation conclusory and remanded. *See id.* at 20–21, 2023 WL 8715732, at **7–8.[1]

On redetermination, Commerce explained its finding that the provision of an extra three percent of trading units to only some carbon emitters is specific. As explained below, the court sustains that conclusion.

I

These cases involve what the Tariff Act of 1930, as amended, calls a "domestic subsidy." 19 U.S.C. § 1677(5A)(D).[2] Such subsidies are specific when they are "narrowly focused" and "provided to or used by discrete segments of an economy." *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act* (SAA), H.R. Rep. No. 103–316, vol. 1,

---

[1] Dongkuk's companion action, Case 22-32, rises or falls with Hyundai's. *See* Slip Op. 23-182, at 8 n.1, 2023 WL 8715732, at *3 n.1. Docket citations in this opinion refer to the latter case.

[2] In addition to domestic subsidies, the statute recognizes "export" and "import substitution" subsidies. *See id.* § 1677(5A)(B), (C). All ensuing references to "subsidy" in this opinion mean a domestic subsidy.

**Ct. Nos. 22-00029, 22-00032**                                          **Page 4**

at 930, 1994 U.S.C.C.A.N. 4040, 4242.[3] But "government assistance that is both generally available and widely and evenly distributed throughout the jurisdiction of the subsidizing authority is not an actionable subsidy." SAA at 913, 1994 U.S.C.C.A.N. at 4230.

This test "function[s] as an initial screening mechanism to winnow out only those foreign subsidies which truly are broadly available and widely used throughout an economy." *Id.* at 929, 1994 U.S.C.C.A.N. at 4242. Thus, "a tax credit for expenditures on capital investment" that is "available to all industries and sectors" is not specific. *Id.* at 929–30, 1994 U.S.C.C.A.N. at 4242 (quoting *Carlisle Tire & Rubber Co. v. United States*, 564 F. Supp. 834, 838 (CIT 1983) (Maletz, J.));[4] *see also id.* at 930, 1994 U.S.C.C.A.N. at 4242 ("The specificity test" precludes imposing countervailing duties where a subsidy enjoys "widespread availability *and use* . . . throughout an economy.") (emphasis in original).

Subsidies are specific "as a matter of law" (de jure) "[w]here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry." 19 U.S.C. § 1677(5A)(D)(i).[5] A "corollary" provision, SAA at 930, 1994 U.S.C.C.A.N. at 4243,

---

[3] The SAA is an "authoritative expression" of the statute's meaning. 19 U.S.C. § 3512(d).

[4] The SAA characterizes *Carlisle* as "the leading case" for purposes of identifying specificity. *Id.*

[5] For these purposes, "enterprise or industry" "includes a group of such enterprises or industries." *Id.* § 1677(5A)(D).

states that a subsidy is not de jure specific when the relevant foreign agency or law

> establishes objective criteria or conditions governing the eligibility for, and the amount of, a subsidy . . . if—
>
> (I) eligibility is automatic,
>
> (II) the criteria or conditions for eligibility are strictly followed, and
>
> (III) the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document so as to be capable of verification.

19 U.S.C. § 1677(5A)(D)(ii).

The statute defines "objective criteria or conditions" as ones "*that are neutral and that do not favor one enterprise or industry over another.*" *Id.* (emphasis added). They must be "economic in nature and horizontal in application, such as the number of employees or the size of the enterprise." SAA at 930, 1994 U.S.C.C.A.N. at 4243. Provided that the relevant benchmarks are agnostic as to industry or sector type, "a subsidy would not be deemed to be de jure specific merely because it was bestowed pursuant to certain eligibility criteria." *Id.*

In short, a subsidy is de jure specific when "a foreign government expressly limits access . . . to a sufficiently small number of enterprises, industries[,] or groups thereof," *id.*, whether by company names,

industry types, or discriminatory criteria. There is no "precise mathematical formula for determining when the number of enterprises or industries eligible for a subsidy is sufficiently small so as to properly be considered specific." *Id*. "Commerce can only make this determination on a case-by-case basis." *Id*.

Even if not de jure specific, a subsidy may be specific "as a matter of fact" (de facto) if "one or more" enumerated factors "exist." 19 U.S.C. § 1677(5A)(D)(iii). Those factors are whether the "actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number"; "[a]n enterprise or industry is a predominant user" or "receives a disproportionately large amount of the subsidy"; and in practice the discretionary award of the subsidy "indicates that an enterprise or industry is favored over others." *Id*. § 1677(5A)(D)(iii)(I)–(IV).[6]

II

On remand, Commerce explained that the South Korean Ministry of Environment imposes "international trade intensity" and "production cost" conditions "in an explicit manner to certain industries or 'subsectors.'" Appx16462. "Such an express, legal limitation

---

[6] A third form of domestic subsidies are those that are "regionally specific." *Canadian Solar, Inc. v. United States*, 23 F.4th 1372, 1375 (Fed. Cir. 2022). These are provided by "a central government to particular regions" and by "state and provincial" authorities "to particular regions within" those jurisdictions. SAA at 932, 1994 U.S.C.C.A.N. at 4244; *see also* 19 U.S.C. § 1677(5A)(D)(iv); *Carlisle,* 564 F. Supp. at 838 n.6.

on eligibility for the additional three percent . . . allocation" is de jure specific. *Id.*

Elaborating, the Department observed that the South Korean greenhouse gas regulatory program does not apply to every industry in that country. *Id.* Instead, it "is limited to a subset of industries," carbon emitters. *Id.*[7] And only a part of that subset is eligible for the three percent unit bonus—those entities "that fulfilled the same trade intensity and production cost criteria used by" the European Union and California "in implementing their emissions trading system." Appx16463.

The Department found that these standards "are not horizontal in application and, thus, are not neutral . . . ." Appx16466. Unlike "examples of neutral criteria in the SAA (*i.e.*, the number of employees or size of the enterprise)," the production cost factor "inherently favor[s] . . . more [greenhouse gas]-intensive (*i.e.*, heavy polluting) production processes" over less pollution-intensive subsectors. *Id.* In the same way, the "international trade intensity" criterion favors businesses that "are more dependent on international markets for sales and/or sourcing" over subsectors that rely less on such markets. *Id.* By singling out "certain types of subsectors," the subsidy is "de jure specific." *Id.* (citing 19

---

[7] The South Korean greenhouse gas statute applies to "entities" from which the average total amount of annual greenhouse gas emissions during the preceding three-year period is at least 125,000 tons of carbon dioxide equivalents *or* that have a place of business that produced 25,000 tons of $CO_2$ equivalents during that same three-year period. Appx16462–16463.

**Ct. Nos. 22-00029, 22-00032**                                 **Page 8**

U.S.C. § 1677(5A)(D)(i)). The agency observed this conclusion aligns with its previous determinations recognizing that subsidies are de jure specific when they target "enterprises or industries that perform certain types of activities or use certain types of resources." Appx16473–16474.[8]

### III

Hyundai acknowledges that a foreign statute need not name industries for a subsidy to be de jure specific. ECF 75, at 14. But it asserts that the production cost and trade intensity criteria do not "expressly limit access to the subsidy to an enterprise or industry," *id.* (quoting 19 U.S.C. § 1677(5A)(D)(i)), as any entity may satisfy them, *id.* at 9. And according to the company, these conditions are "neutral and . . . do not favor one enterprise or industry over another," *id.* at 6 (quoting

---

[8] The Department also noted that the South Korean greenhouse gas regulatory program applies to 63 subsectors. Appx16467. Of those, 37 receive the subsidy. *Id.* Nearly all "are included because they satisfy the trade intensity criteria." *Id.* These subsectors "are related to 'iron and steel,' 'manufacture of semiconductors,' 'manufacture of basic chemicals,' 'manufacture of aircraft,' and a variety of other internationally-oriented manufacturing subsectors." *Id.* The remainder "qualify based on the production cost criteria, including 'group energy' and 'waste treatment.'" Thus, only the "trade and/or emission intensive subsectors" are eligible. *Id.* In contrast, the ineligible subsectors "cover[ ] a broader spectrum of manufacturing groupings in addition to a broad set of service industries, such as 'electricity,' 'telecommunications,' 'computer programming,' 'insurance,' and 'hospital activities.'" *Id.*

19 U.S.C. § 1677(5A)(D)(ii)), because they "app[ly] to *all* subsectors," *id.* at 24 (emphasis in original).

The company relies heavily on *Hyundai Steel Co. v. United States*, 701 F. Supp. 3d 1398 (CIT 2024) (*Hyundai III*), where in the context of a different countervailing duty order Commerce similarly found the three-percent subsidy de jure specific.[9] As here, the Department reasoned that production cost and trade intensity criteria were proxies for the heaviest polluters and most trade-reliant entities. 701 F. Supp. 3d at 1411. The court held that this "rationale merely repackage[d] the language of the criteria into a statement that certain subsectors are favored." *Id.* at 1412. "Converting the language of the criteria into subsector descriptors is insufficient to demonstrate that a subsidy may not operate throughout the economy." *Id.*[10]

The government "respectfully disagree[s]" with *Hyundai III*. ECF 78, at 26. It argues the court should instead follow *BGH Edelstahl Siegen GmbH v. United States*, which held that the EU's cap-and-trade scheme was de jure specific because it provided a subsidy to a subset of regulated entities based on their "risk of carbon leakage." 600 F. Supp. 3d 1241, 1264 (CIT 2022).

---

[9] *Hyundai III* involved a countervailing duty order on hot-rolled steel. *Id.* at 1401. The one here covers certain steel plate. Appx16457.

[10] As here, *see* note 8, in *Hyundai III* Commerce also relied on the list of qualifying subsectors to find de jure specificity. *See* 701 F. Supp. 3d at 1412. The court held that "[t]hese considerations are [only] relevant to a de facto specificity analysis." *Id.* (citing 19 U.S.C. § 1677(5A)(D)(iii)).

In so holding, *BGH* apparently reasoned that this criterion was not neutral for purposes of 19 U.S.C. § 1677(5A)(D)(ii).

Recall the relevant first principles. Absent statutory or regulatory language "expressly limit[ing] access to the subsidy to an enterprise or industry" by company name or industry type, 19 U.S.C. § 1677(5A)(D)(i), eligibility standards are a necessary, but not sufficient, condition to establish de jure specificity. *See* SAA at 930, 1994 U.S.C.C.A.N. at 4243 (stating that a subsidy is not de jure specific "merely because it [is] bestowed pursuant to certain eligibility criteria"). The question in such cases is whether the conditions "are neutral and . . . do not favor one enterprise or industry over another." 19 U.S.C. § 1677(5A)(D)(ii).

As Commerce has repeatedly and correctly recognized, *see* Appx16474–16475, metrics that select enterprises based on the substantive character of their operations—whether their inputs, outputs, customers, or externalities—are not neutral. That's because they're not "economic in nature and horizontal in application, such as the numbers of employees or the size of the enterprise." SAA at 930, 1994 U.S.C.C.A.N. at 4243. Here, as the Department explained on remand, the South Korean regulatory program facially limits the subsidy to entities that are the heaviest carbon emitters, the most dependent upon international trade, or both. Appx16466. Because a company's eligibility thus turns on what it *does*, the criteria are not content-neutral, as it were. *Cf. Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (stating that "even in a public

forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech'").

Hyundai's argument that emissions and international trade criteria are neutral because they "app[ly] to *all* subsectors," ECF 75, at 24 (emphasis in original), is wordplay. Of course selection standards *apply* universally. That doesn't mean they're *evenhanded* for countervailing duty purposes. Consider Judge Maletz's example of "a tax credit for expenditures on capital investment." *Carlisle*, 564 F. Supp. at 838. Such a credit would be neutral if eligibility were based on company revenues or employee head count. But if eligibility turned on emissions intensity or export-market dependency, the credit would discriminate according to operational characteristics and so be de jure specific.

The court thus agrees with *BGH* and—like the government—respectfully disagrees with *Hyundai III*. In both cases, subsidy eligibility turned on the nature of an enterprise's operations and was therefore de jure specific. The latter decision characterized the Department's analysis as "[c]onverting the language of the criteria into subsector descriptors . . . ." 701 F. Supp. 3d at 1412. But what the agency did was to describe the substantive industry attributes that the criteria pick. Selection on such an impermissible basis is precisely what makes the subsidy discriminatory rather than neutral because it "favor[s] one enterprise or industry over another." *See* 19 U.S.C. § 1677(5A)(D)(ii).

**Ct. Nos. 22-00029, 22-00032**                      **Page 12**

Finally, it is of no moment that Commerce went further than needed by comparing the numbers of ineligible and eligible subsectors. *See* note 8. Insofar as these considerations are only relevant to a de facto specificity analysis as *Hyundai III* found, *see* 701 F. Supp. 3d at 1412, this merely demonstrates that a de jure–specific subsidy is also necessarily de facto–specific in its operation.[11] At worst this was harmless error.

\* \* \*

The South Korean greenhouse gas program provides a subsidy, based not on company name or industry type, but rather on an entity's operational characteristics. Commerce's original decision simply labeled those criteria as de jure specific without any meaningful discussion. On remand, the Department explained that operational characteristics are not neutral eligibility standards. The court accordingly sustains the agency's redetermination. Separate judgments will enter in both actions. *See* USCIT R. 58(a).

Dated:   January 16, 2025       <u>/s/ *M. Miller Baker*</u>
           New York, NY            Judge

---

[11] A de facto–specific subsidy, however, is not necessarily de jure specific.